This is a state appeal from the suppression of evidence and statements obtained as a result of a traffic stop and an accompanying search and seizure. In this case, Trooper Wofford stopped the defendant's vehicle for following too closely and as things played out, ultimately cocaine in seven baggies was found and a handgun in a locked box to which the defendant had the key in on his key ring. As will be discussed, all of the court's factual findings are manifestly erroneous and all of the court's conclusions of law are also erroneous and those are subject to a de novo review. As to the stop itself, the court found that the trooper could not have determined the defendant was following too closely because the trooper could not have counted the dotted lines in order to determine the space between the defendant's vehicle and the camper in front of it. The court commented that the video of the stop didn't show any time in which the trooper could have counted the dotted lines and that the lines that he was trying to count would have been a blur at some point in time. The court also found that the trooper failed to offer any testimony about his training or background. Well, the court totally misapprehended the trooper's testimony because the trooper never testified that he counted dotted lines. In fact, repeatedly he was asked, well, are you counting dotted lines? Are you using this to determine the space? No, the test I am employing is a time interval test in which he would select a center point, a point, a line in the center line and would determine when the camper's tires crossed that. And then he would begin counting 1, 1,000, 2, 1,000 to the point where the defendant's tires reached that same reference point. It is a time interval test. It is a test that is set out in the Rules of the Road, which is a driver's instruction manual that's published by the Secretary of State. And presumably everyone who drives should be able to apply this test to determine whether they are following at a reasonable and prudent distance behind the vehicle that is in front of them. But the court's wrong. He never counted dotted lines and so that factual finding is totally erroneous. The court also commented about the video not being able to show that the trooper could observe the dotted lines to count them. Well, the court was incorrect to equate what the video showed with what the officer could see. The officer testified that what he could see from his vantage point, which is not the same vantage point as where the camera was mounted, was better. And he testified that he could always, he was driving in the left lane, he could always see the tires of both vehicles and he was able to conduct several counting tests. The court must have misapprehended as well that the tape was activated at the point the trooper turned on his lights, but it is retroactive by a minute and about six seconds. Because apparently the camera is always recording, but it only keeps or stores a minute to two minutes before the trooper will activate his lights. So what the camera is showing from the beginning of the videotape that you honors will look at, I'm sure, there's a minute and about six seconds until the lights are activated. And in that minute and six seconds is when the trooper observes the moving violation. The trooper is driving in the left lane on the same direction on the interstate. Yes. And the defendant's ahead of him and the vehicle pulling the trailers ahead of the defendant. Right. And the trooper testified that he could, he testified that he conducted several counting tests, that he followed him for a half a mile. And he observed that during that interval, he was following, the defendant was following the camera in front of him at less than one second. And this is in violation of all of the rules of the road, which is two seconds for lower speeds and three second interval for higher, for higher speeds. And this defendant was following at less than one second. So it was, it wasn't, it wasn't marginal whether he was following too closely or not. He was. And as I said, the trooper applied the test that did the rules of the road, which, which is every driver is commonly expected to be able to follow at a reasonable and prudent distance. And every, it, it takes no training to understand the rules of the road and the distance at which you are to travel, which is a reasonable, prudent distance. Having due regard, according to the statute, for the speed of such vehicles and the traffic upon and the condition of the roadway. So if it's wet, you know, you have to increase your distance. Did the defendant testify? The defendant was, he did not testify except he was called to demonstrate whether he would exhibit eye tremors. And the trooper testified that yes, in court he did. There was no testimony. No, there was no testimony. That he was not driving too close. No, in fact, there's an admission on the videotape. The defendant says, well, maybe I, I wasn't following as far back as I usually, I'm, I'm paraphrasing. Maybe I'm not following back as usually, as far back as I usually do, but it's because I just pulled over because the road was rough. And the trooper responds, well, that's understandable and you're just going to get a warning ticket. But in this case, the court was wrong about the dotted line test. He did not ever test, testify in his county dotted lines. And the trooper didn't have to present testimony about his training. But he did say, based on his training and experience, the defendant's Nissan was following not at a safe distance. And it was way too close. The court also found that the, the, the trooper was required to give a distance in feet or car lengths. And that because he could not give a distance in feet or car lengths, the evidence had to be suppressed. He didn't have a reasonable suspicion of probable cause to stop following too closely. Well, the statute does not require this. The statute provides the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent. That's a subjective standard. Have a due regard for the speed of such vehicles and the traffic upon the condition of the highway. The statute itself does not set out a distance in feet or car lengths. And the court was, was committed error for requiring the trooper to give a distance in feet and car lengths. The trooper did have to have probable cause according to the correct standard. Look at the historical facts leading up to it. And you look at the officer's training and experience and what a reasonable officer would apprehend. He testified that he could see the tires of both vehicles, that he conducted several counting tests. And that he followed him for over half a mile. And that during this time the defendant was following behind at less than one second interval. And this is, and as well there was the tacit admission that I already mentioned that the defendant made that he wasn't following as far back as he usually did. It's not an expressive admission, but it's a tacit admission that he was, knew he was following too closely. The court also suppressed the evidence because the people did not present evidence regarding the training of the trooper and the canine. The problem with this is that the defendant didn't raise this in his motion to suppress. He made no challenge to the training of the trooper or the canine. In fact, it only came out in one conclusory statement in closing out argument after all of the evidence had been presented. So the people had no notice that they were challenging it. In fact, they didn't. And it was unfair to hold the people to meeting a challenge they didn't know they were going to be required by the court to meet. But nonetheless, the defendant did elicit the sufficient evidence of the trooper's training and the canine's training. This is actually a pretty simple case. It comes down to the police officer being surprised by the videotape. He didn't know what was on it. He took the stand and testified that he was driving along and followed this car for over half a mile because Stephen was driving too close. And so he pulled it over. He didn't rush up and pull the defendant's car over. The problem is when you look at the videotape, you see that's exactly what he did do. And that's what the judge found. The direct contradiction of what this officer testified to and what the videotape showed. You've seen the videotape. Oh, sure. Was there less than a second, if you look at the dotted lines, a fixed point and count between him and the vehicle in front of you? I think it was more than an hour. But the standard is reasonable and prudent distance. He was following pretty close, wasn't he? You know, under the circumstances, under the conditions of the road, I don't think he was. It's important to remember this happened very, very quickly, and it was caused by the officer himself. There was a rest stop there. And what happened is shown in the videotape, the officer whipped around. He knew that the defendant didn't have a license plate. He had a temporary sticker. He whipped around, rushed up there, and pulled the defendant over right away. That's what the videotape shows. And the way it happened was they're coming up to a rest stop area, and there's a pole, and there's this camper and the defendant behind the camper. Now, both the camper and the defendant are slowing down. And instead of going by them, the officer comes up alongside and then goes in. So naturally, there's going to be a little bit of bunching right there, but it happened quickly. It certainly wasn't over any kind of half a mile. It wasn't anything like that. It happened really, really quickly. Rushed up the defendant, pulled him over.  He counted this many times. The officer testified to this, the officer testified to that, as if this officer's testimony automatically had to be believed. And we know that it wasn't. The officer testified that he did not rush up, pull the defendant's car over, and the court specifically found he did. This judge rejected the officer's testimony based on the evidence in the videotape. And so when the state comes up and tries to tell you that this is what happened and this is what happened and counted here and so forth, that's all based upon some sort of assumption that we have to accept the officer's testimony. We weren't there. We didn't see that officer testify. We don't know what he looked like the first time he saw what was on that videotape instead of what he had testified to. But the judge did. The judge saw that and rejected his testimony. Now, this business about the dotted lines, I think you can make short work of that. There was nothing about that in the record. What the judge is really talking about is that if you look at that videotape, as far away as when he first sees that thing, the lines are all blurred. And, of course, he's counting the dots. He even admits it. He counts this dot and sees it goes by. Then he counts another dot and he sees it goes by. That's what he's saying, counting the dots. There's nothing wrong with that. The judge was not saying that it has a matter of law or has to be 15 dots between two cars or anything ridiculous like that. There's nothing like that in this record when you look at it. The factual findings that the court made here, the court didn't have to make any factual findings, not one. All the court had to do was make a ruling. And once that court makes that ruling, there's a presumption that any findings that needed to be made to support that ruling were made. And yet the court did make some factual findings, and those are well supported. Any additional findings that might need to be made are presumed. The state is making the assumption that it gets the benefit of this record, and it doesn't. It lost its case. And it lost its case based on the credibility of the police officer and the evidence from the videotape itself, which shows that this officer rushed up to the defendant's car, pulled him over very quickly. There's no way that he followed behind this car for over half a mile and could tell that the defendant was pulling too close. Another important point on that was that when the officer was cornered and finally said, are you sure that you counted these dots, you counted this dot? And he goes, well, I usually use a dot, but sometimes I use a tree or a sign. And what did you do here? Well, I'm not 100% sure. Well, how do you know that he was following too close? Well, I would have pulled him over otherwise. Well, that's not very credible testimony. There's no reason to assume that the officer was credible here. I mean, we even pick jurors. We pick jurors who pick jurors and say, now, when a police officer gets up and testifies, are you going to agree that you're going to look at this officer's testimony like you would any other witness and not just assume that the officer's telling the truth because he's wearing a uniform? We may say that they're going to do that. Well, the state's trying to come up here and say that because this guy was on stand-in and wearing a uniform and all those things, he testified to the truth. The judge found otherwise. And this case stands or falls on the credibility of that police officer and the credibility of the police officer's objective. The court could look at this video and could see that there was plenty of space between those cars, especially under the circumstances with an on-ramp coming, with people trying to get off that highway from the rest area, and a police officer in the left-hand lane when no one could pull over and make room. So because there's plenty of evidence to support the service court's finding, we'd have to have a little bit of suppression. Do you agree with that? Your Honors, if it was a matter of credibility, this court would have to give deference to that. But it is not a matter of credibility. It is a matter of the court totally misapprehending what the trooper's testimony was. And that's a different matter altogether. That goes to whether the court's factual finding is manifestly erroneous or not. And it is. And also the court misapprehended the import of this video. The video begins one minute and six seconds approximately before the officer activates his lights. In that minute and six seconds approximately, the trooper testified that he turned around at mile marker 168 because that's the edge of Effingham County and he stays within Effingham County. He also testified that he did not see the defendant's car while he was going northbound and then turned around to head southbound. Now, this court can take judicial notice that if you're going 60 miles an hour on the interstate, which most people do not, you're going to travel one minute, one mile a minute. In this case, the trooper said that he has half a minute to catch up with the defendant. And he does testify he speeds up because when you turn around, you're going to speed up to get into the flow of traffic. He testifies that he watches the defendant for one half of a mile. That's 30 seconds. That's plenty of time to observe the moving violation, to do the counting test, several counting tests, and then activate his lights. So the court, looking at this video, its findings are totally manifestly erroneous. The officer had time and he testified he had a different perspective. The court is erroneous to equate what the camera could see with what the officer could see in his driver's seat. And the officer testified that what he could see was better than what the video camera shows because of the perspective. And he also testified that he could observe the tires of both of the vehicles and that he conducted several counting tests. This testimony was uncontradicted. The court's finding about whether there was probable cause to stop and effectuate this traffic stop is manifestly erroneous. Its conclusions that the officer had to give a distance in feet or car lengths is erroneous as a matter of law because the statute itself does not require it. And unless there are any questions, I ask that the court overturn the hearing.